First case, case number 20-2071 United States v. Michelle Simmermaker. All right, let's proceed then with the appellate, uh, Mr. Sheets. Good morning. You may proceed. May it please the courts. My name is Ray Sheets. I'm coming this morning from Cedar Rapids, Iowa. Um, this is a fourth amendment, uh, suppression case and, and rather than reciting the facts, which are quite straightforward, um, the district court relied on two things to, um, deny the defendant's motion. The first was that the court found that, uh, the defendant was an overnight guest. As opposed to a visitor. And as we set forth in our brief, uh, there really is no distinction between the two anymore after, uh, the Supreme Court's Olson case, um, Minnesota v. Olson, uh, the Supreme Court in Olson emphasized it was, uh, not whether a or a visitor, what matters the most is whether the person had a reasonable expectation of privacy and property to be searched. And the leading case, uh, I think in the circuit on that, uh, uh, issue is that Humboldt Jones case. Um, and in that case, there was a search done at night. Um, there was no doubt that the, uh, persons involved in that case were overnight guests. They were staying overnight at a, at a birthing clinic. And so the circuit, uh, had no problem finding that, uh, because they were overnight guests or they really, there was no distinction made. Uh, but they, those, uh, persons certainly had an expectation of privacy that the court recognized. So I'm going to move on to the second part of the district court's analysis. And if you recall, the magistrate judge granted the motion to suppress, and it was after the government, uh, made some objections that the district court then rejected the magistrate's, uh, reasons for granting the motion. The second reason the district court, um, or the second, uh, thing that the district court criticized was the collective knowledge doctrine. And first of all, uh, I'd like to state whether the collective doctrine, uh, collective knowledge doctrine applies or it doesn't apply, it really doesn't make any difference in that, uh, assuming that it does apply, police still needed to get a warrant for that Brinks box that was locked. Um, and they did not have that. So, um, the collective knowledge doctrine is based upon the premise that all officers involved in a search collectively know the background of the case, assuming that there is some communication between the officers. Counsel, isn't, Judge Pobos here, isn't the real question whether or not there was enough information in the officer's possession, connecting your client to the information underlying the warrant. That is the, uh, distribution of drugs out of this location. It seems to me and correct me if you think I'm wrong, but it seems to me the case turns on that particular issue. And if I recall here, there was a meth pipe found, um, next to your client on the couch. Um, there was information the officers had when they obtained the warrant that there were multiple people staying in the house, the officers had some background, uh, with your client, whether or not that, you know, is relevant or not, I guess I'm not sure, but why isn't that enough to connect your client and her Brinks box to, uh, the probable cause of termination that was found in the warrant? Well, it is, it is, I mean, it would be sufficient probable cause. And if the officers believe that that was indeed the case, um, then they needed, just like they obtained a warrant to search her person, they needed to also, uh, get a warrant to search that Brinks box. So if the court recalls the, um, defendant was found sleeping on a couch, I guess the first clue that someone is an overnight guest or a visitor, and, uh, she was ordered to, uh, she was removed from the couch and placed into a different room and that's where the Brinks on that same couch was the meth pipe and the, uh, Brinks box. If there was indeed probable cause enough to get into that Brinks box, then the officers had the responsibility to, um, get a, get a second warrant, just as they did, uh, get a second warrant to search the person of the defendant. So yes, I, whether there was probable cause or not, we'll concede that there was, but the issue becomes, um, if the officers believe that, yes, indeed, there was probable cause they should have gotten a warrant. Well, here's the question I've got is the board does allow you to search lock boxes generally. Uh, there's a meth pipe. There's, um, a, uh, a Brinks box. It's in the proximity of the defendant, but there's no assertion by anyone. That's my Brinks box. There's no question asked, I guess, either about it. So that's sort of problematic, but I mean, you got a warrant in hand says you could search lock boxes. You got a meth pipe in a lock box. Um, why do you need another warrant? Well, as the, the circuit has noted that when, when it comes to searching the possessions of visitors or overnight guests, it gets into a very difficult area. Um, and the circuit does get into a difficult area, except we know that people are coming and going and that they're involved in the sale and, uh, buying of drugs that's, that's in the warrant. And so this is a person who's, uh, dressed in her night clothes. It's nine in the morning, uh, during the course of the search, he says all the meth in the house is mine. You know, um, I'm not, I mean, I'm having a hard time, you know, that, you know, cut through the whole chase. I mean, I'm saying, you know, at the very end, very end, I mean, how's an officer not able to rely on a warrant that says I can look in lock boxes? Well, they could, uh, if they knew that that person was living in the home, um, because this person was a guest, uh, guests have protection. Um, they have to have, but only if they, you can establish that it's their property that's being searched, right? I mean, when the lock box was open, there was no indication that it was her property, uh, that, uh, that an officer would, would, would know that. I mean, it's a lock box next to a meth pipe on a couch. Well, yes, that's true. But what's also what the court struggled with at the district court level was the fact that the officer that found the box and searched the box didn't testify, was never called as a witness. So we don't know those things. You're assuming a lot of things that the officer knew, knew this or that. And there was no testimony in regards to that at all. The only thing that we knew, we, we, we know that the officers know was that Ms. Simmermaker, the defendant, didn't reside at that house. We know that they've known her from since she was a child. So they knew she wasn't the named person in the warrants. So that's what we know. The officer who found the box and searched the box never testified for reasons that, uh, we don't know. I'd like to reserve the last minute and a half. Very well, Ms. Simmermaker, you may proceed. Uh, may it please the court. Emily K. Neidl, assistant United States attorney from the Northern district of Iowa here, representing the government. In this case, Ms. Simmermaker, uh, was an overnight guest and connected to the ongoing criminal activity at the time the lock box in question was searched. It was within the scope of the warrant issued. And to the extent it is not, this is not a case that would warrant suppression as the officer's actions were not deliberate, reckless, or negligent negligently done, uh, in violation of the warrant. As the court, um, has already discussed this morning with Mr. Sheets, uh, there is sufficient evidence to connect this defendant to this residence, uh, she wasn't overnight guests, uh, defendant concedes that and even argues that in arguing for standing in this case, she was found asleep in the, uh, residence, uh, Mr. Sheets indicated that we don't, that they knew she wasn't living there. I don't know that officers would be able to say that they didn't know she was living there, they didn't anticipate going in that she was living there, but upon arrival, um, I don't think they could have established whether or not at that time for sure she hadn't moved in. Defendant was the only adult downstairs. She was in clothes, uh, consistent with an overnight stay. Her daughter was known to frequent that residence and her granddaughter was also present. Defendant also had had a recent drug conviction of her own. She had been involved in a federal case where her husband was charged. Uh, ultimately she was not in that case and the resident in use had a history of drug use and people coming and going and dealing from that residence. Defendant again was sleeping on the couch with a meth pipe and a Brinks box, um, indicating her involvement with the ongoing criminal activity. I'd like to highlight some of the evidence, um, in this case from the government's video exhibits, uh, just for the court's reference. Although it's not necessary to know specifically what officer Frye, um, was thinking as this is an objective rather than a subjective standard. I'd like to point out to the court, um, in review of government's exhibit number three, and approximately 410, uh, officer Frye is identified, um, identified specifically as wearing a Muscatine County sweatshirt. He has a hat on, um, that's done in the transcript at, uh, page 57. Turning then to government's exhibit number seven, uh, with the knowledge of what Mr. Frye looks like, um, would be noteworthy that, um, at approximately 1858 officer Frye can be seen coming down the steps. Uh, shortly after that, he can, uh, Ms. Restroom and Mr. Frye indicates before you, um, do that, we're going to need to search you essentially because of all the things that were going on over there in the couch area, indicating that he was aware that she was the one there. Uh, additionally, by watching, um, government's exhibit number seven, you can get a better sense of the closeness of the room and the participants in this case, um, all the officers are milling around, all the defendants are milling around. It's a close quarters area. You can see the room off to, um, off to the side where Ms. Simmermaker was found. Um, noteworthy that at around the 21 minute mark of government's exhibit seven, uh, Mr. Our officer Frye also talks about Jeff referring to Jeff Simmermaker, the defendant's husband, not being out of prison for the 10 to 15 years. And this is a reference to his recent or fairly recent federal sentence at the time, based on the facts in this case, it is clear that this defendant was connected with the residence. So it was connected with the, uh, criminal activity would note that, uh, trying to indicate the indicated the district court struggled with lack of testimony by officer Frye. It did not. The magistrate court admittedly addressed that issue. Uh, but the district court was not concerned with that as it recognized the collective knowledge doctrine. And in this case, um, found instead that the objective knowledge of the officers made it appropriate for these officers to search a lock box as noted, that was specifically listed in the warrant. So based on all of these facts, we believe the district court properly decided this issue, um, would know that there's been no question to whether or not this defendant had standing. Uh, but it is her standing and the reason she has standing. That is the same reason that officers are able to search her property. It's her connection to the house. Uh, this is not a situation where officers came upon a defendant in a residence and it appeared that she had just gotten there or was, uh, merely stopping briefly, she was asleep. The fact that she was sleeping, um, essentially with this lock box, uh, uh, makes it more suspicious that there is contraband within the box and it was appropriate to search. Unless the court has any questions for me, um, that is essentially the government's argument. Um, and if there's no questions, I would yield the rest of my time. All right. Thank you very much. Mr. Sheets. Thank you, Your Honor. I want to go back and address a couple of questions that Judge Erickson had or, or statements that Judge Erickson made about, uh, the pipe that was located and about the statements that Ms. Simmermaker made at the time of the search. Page 26 of the magistrate's, uh, report and recommendation. And again, the magistrate, uh, made findings of fact that were not objected to by either party. And the magistrate found, uh, without any objection from the government that officer Frye was unaware of any statements made by the defendant regarding her ownership of the box or its contents. Um, that the, um, when office there's no facts in the record that officer Frye saw a methamphetamine pipe, um, prior to his decision to search the box. And so when you look at those facts, I mean, uh, now we know them, but we don't at the time of the search, we don't have any evidence as to what this officer knew. He, he wasn't presented by the government as a witness. And so, uh, I'd ask the, uh, this court to, um, follow the findings of fact of the magistrate that were unobjected to at the time. Um, I don't think it makes any difference whether officer Frye who searched the box, what he was wearing or what he looks like, um, I'm not sure what that adds to the analysis. Are there any other questions? Thank you, your honors. Thank you very much. And, uh, before we conclude, Mr. Sheets, I note that you are, uh, appointed, uh, serving as appointed counsel in this matter, the court extends its thanks to you for your service. Thank you, your honor. All right. The case is submitted and the court will render a decision in due course.